# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 00 C 7489 | Date | July 31, 2001 |
| Case Title | Nuveen Investments  v  Gregory P. Hogan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]
(2) ☐ Brief in support of motion due _____
(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____
(4) ☐ Ruling/Hearing on _____ set for _____ at _____
(5) ☒ Status hearing ☐ held ☐ continued to ☒ set for ☐ re-set for 8/14/01 at 9:00
(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____
(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____
(8) ☐ ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____
(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
  ☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒ [Other docket entry] Memorandum opinion and order entered. Accordingly, plaintiff's motion for judgment on the pleadings is denied in part and granted in part.

(11) ☒ [For further detail see ☐ order on the reverse of ☒ order attached to the original minute order form.]

| | | | |
|---|---|---|---|
| ☐ No notices required, advised in open court. | | | number of notices |
| ☐ No notices required. | ED-7 FILED FOR DOCKETING | AUG - 2 2001 | date docketed |
| ☒ Notices mailed by judge's staff. | | | Document # |
| ☐ Notified counsel by telephone. | 01 AUG -1 AM 11:05 | 15 | 36 |
| ☐ Docketing to mail notices. | | | docketing dpty. initials |
| ☐ Mail AO 450 form. | | | date mailed notice |
| ☐ Copy to judge/magistrate Judge. | | | |
| 🖋 courtroom deputy's Initials | Date/time received in central Clerk's Office | | mailing dpty. initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NUVEEN INVESTMENTS,  )
                     )
        Plaintiff,   )
                     )          No.    00 C 7489
    v.               )
                     )          Judge Robert W. Gettleman
GREGORY P. HOGAN,    )
                     )
   Defendant/Counter-Plaintiff. )
_____)
                     )
GREGORY P. HOGAN,    )
                     )
    Third-Party Plaintiff, )
                     )
    v.               )
                     )
GREGORY MICHAELS & ASSOCIATES, )
                     )
    Third-Party Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Nuveen Investments' ("Nuveen") has filed a one-count declaratory judgment amended complaint, asking that the Court determine and adjudicate the rights and liabilities between Nuveen and its former employee, Gregory P. Hogan ("Hogan"). Hogan counterclaimed against Nuveen, alleging breach of contract, fraud and promissory estoppel, and filed a third-party complaint alleging negligent misrepresentation against Gregory Michaels & Associates ("GMA"), the executive recruiting service hired by Nuveen to assist in its search for a president of their Family Wealth Management Business. Nuveen moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and GMA moved to dismiss pursuant to Fed. R. Civ. P.



12(b)(6). For the reasons set forth below, Nuveen's motion is granted in part and denied in part, and GMA's motion is granted.

## Facts

The same standards apply to both a Fed. R. Civ. P. 12(b)(6) motion to dismiss and a Rule 12(c) motion for judgment on the pleadings. Gutierrez v. Peters, 111 F. 3d 1364, 1368 (7th Cir. 1997). For the purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the non-movant. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). Hogan's allegations are set forth below.

On and prior to April 1, 2000, Hogan was employed by the firm of Scudder, Stevens & Clarke of New York. Hogan had worked there for two and a half years, and at the time he left, held the position of Director, Private Investment Counsel. In September or October of 1999 Kambrea Wendler ("Wendler") of GMA first contacted Hogan and informed him that she represented Nuveen and was interested in speaking to him about the possibility of becoming the President of Nuveen's Family Wealth Management Business. Hogan was not looking for new employment at the time. During that telephone discussion, Wendler provided Hogan with information about Nuveen,[1] and information regarding the professional and personal attributes of Timothy Schwertfeger ("Schwertfeger"), Nuveen's Chair and CEO, and John Amboian ("Amboian"), Nuveen's President and Chief Operating Officer. At that time, GMA allegedly had

---

[1] The information included the nature of Nuveen's business; Nuveen's corporate structure; Nuveen's various investment subsidiaries; Nuveen's business model; Nuveen's personnel; Nuveen's products and services; Nuveen's business strategy for its entry into The Family Wealth Management Business.

2

an agreement with Nuveen pursuant to which GMA would receive compensation if it was able successfully to place Hogan, or some other individual, in the opening in Nuveen's Family Wealth Management business.

Following this initial phone call, the two held numerous subsequent phone calls, during which Wendler provided Hogan with information about Nuveen and attempted to persuade him to take the job with Nuveen. Hogan also met with Wendler and Greg Greco of GMA in GMA's Chicago office for several hours to discuss further the potential of Hogan joining Nuveen, during which they provided Hogan with in-depth information about the job.

On December 10, 1999, Hogan again met with Wendler at GMA's Chicago office to discuss potential employment at Nuveen. At this meeting, Wendler again provided Hogan with in-depth information about Nuveen. Between December, 1999 and February, 2000, Hogan engaged in numerous telephone conversations with Schwertfeger and Amboian and Wendler, and personally met with them to discuss Nuveen and potential employment.

Ultimately, on or about February 8, 2000, Hogan met with Schwertfeger and Amboian for several hours at Nuveen's Chicago offices. During that meeting, Schwertfeger asked Hogan what it would take for him "to join our merry little band at Nuveen and lead the Family Wealth Management effort directly reporting to John and I."

Hogan alleges that he responded that he would be enticed to leave his job only if Nuveen agreed to provide him with a three-year guaranteed term of employment, base salary, sign-on bonus, guaranteed year-end bonuses, and guaranteed awards of stock options in Nuveen, plus the protection of a "parachute" if he were to decide to leave Nuveen after three years. Schwertfeger and Amboian allegedly stated to Hogan that those terms were acceptable to Nuveen.

3

Within days of this meeting, Wendler began calling Hogan on a regular and continuing basis, providing him with information about Nuveen, trying to convince Hogan to join Nuveen, and repeatedly informing Hogan that the terms of employment that Hogan had suggested during his February 8, 2000, meeting were acceptable to Nuveen.

During the period between March 1, 2000, and April 5, 2000, Hogan participated in additional telephone calls with Schwertfeger and Amboian and Wendler where they repeated to attempt to persuade Hogan to become a Nuveen employee, and repeatedly assured Hogan that Nuveen would provide the three-year guaranteed term of employment with a guaranteed base salary, guaranteed bonuses and guaranteed awards of Nuveen stock options. During these conversations, Hogan discussed with Amboian and Wendler fine-tuning the financial arrangements and dollar amounts of the employment agreement.

On or about April 5, 2000, Nuveen provided Hogan with a final draft of the parties' employment contract, labeled "Offer Summary."[2] Hogan executed the agreement on April 12, 2000, and it was subsequently executed by Nuveen on or about that same date. Thereafter, Hogan began his employment with Nuveen as Managing Director, Family Wealth Management Services. At this time, Hogan received 40,000 shares of Nuveen Class A Common Stock pursuant to the Equity Incentives portion of the Offer Summary. Nuveen also paid Hogan $350,000 of the Sign-On Bonus referenced in the Offer Summary.[3]

---

[2]The Offer Summary, along with the parties' Separation Agreement, was attached to the Complaint.

[3]Presumably, the Sign-On Bonus was paid 30 days after commencement of employment, and the Equity Incentives were awarded upon commencement of employment, pursuant to their respective clauses in the Offer Summary, discussed below.

4

During the period between when Hogan first received the final draft of the employment agreement and when he delivered it, executed, to Nuveen (April 5 to April 12, 2000), Hogan engaged in several individual phone calls with Schwertfeger and Amboian, and several separate calls with Wendler. During each of those calls, Hogan was assured, among other things, that the Offer Summary guaranteed Hogan of a three-year guaranteed term of employment, a guaranteed base salary for each of those years of $275,000, guaranteed bonuses that would be paid each year of the agreement, a guaranteed $550,000 sign-on bonus, two guaranteed awards of Nuveen stock options, and a separation payment to be paid should the Family Wealth Business effort were to be abandoned after the three-year term of his agreement.

During his entire tenure with Nuveen, Hogan alleges that he successfully and competently performed his job-related duties and responsibilities in accordance with the contract and, that at all times during his employment, Schwertfeger and Amboian and others inside and outside Nuveen characterized Hogan's performance as "right on the mark." Nonetheless, on October 3, 2000, allegedly without discussion, warning, provocation, notice, basis or justification, Nuveen terminated Hogan's employment. Nuveen paid Hogan his base salary at the rate of $275,000 from the beginning of Hogan's employment through his termination date.

## Discussion

### Nuveen's Motion for Judgment on the Pleadings

#### 1. Breach of Contract

In his breach of contract claim, Hogan contends that he is entitled to: a) his base salary for the remainder of his alleged three-year contract term plus guaranteed cash incentives for that time; 2) a second portion of his Sign-On Bonus; and c) a second portion of Equity Incentives.

The parties agree that the Offer Summary and Separation Agreement are controlling, so this court is called upon to interpret those documents.

Contract interpretation is a question of law and may be adjudicated on a motion for judgment on the pleadings. See Bourke v. Dun & Bradstreet Corp., 159 F.3d 1032, 1036 (7th Cir. 1998). Under Illinois law, which the parties agree governs this case, there is a presumption that an agreement, when reduced to writing, reflects the intention of the parties. Id. The general rule in Illinois with respect to contract interpretation of an agreement is the "four corner" rule, which states that if the plain language of a contract is unambiguous, the court should interpret the contract without the use of extrinsic evidence. Id. "The terms of an agreement, if not ambiguous, should be generally enforced as they appear, and those terms will control the rights of the parties." Dowd & Dowd, Ltd. v. Gleason, 181 Ill. 2d 460, 479 (1998)(citations omitted). Thus, the court must decide, as a threshold matter, whether the documents are ambiguous. In Illinois, "[a]n instrument is ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning, but it is not ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract." Flora Bank & Trust v. Czyzewski, 222 Ill. App. 3d 382, 388 (5th Dist. 1991). "If there is some reason to believe that the writing does not represent the complete agreement of the parties, the court may allow parol evidence to establish the complete understanding." Regensburger v. China Adoption Consultants, Ltd., 138 F.3d 1201, 1206 (7th Cir. 1998). "A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms." Flora Bank, 222 Ill. App. 3d at 388.

6

If one interpretation is reasonable and the other is not, the court will construe the clause consistent with that interpretation. Bourke, 159 F.3d at 1036-37. If the clause is subject to both or neither of the interpretations asserted by the parties, however, the court may resort to cannons of construction and extrinsic evidence. Id.

The "Guaranteed Compensation" clause of the Offer Summary states:

> Executive [Hogan] will receive an annualized starting base salary of $275,000 plus guaranteed annual cash incentive awards of $500,000 for 2000, $525,000 for 2001 and $550,000 for 2002, <u>subject to continuing employment</u>. Beginning in 2003, the Executive will receive annual incentive awards on a basis consistent with the Company's prevailing practices for the Executive's peer group. [Emphasis added.]

Each of Hogan's arguments relating to this clause rest on his conclusion that the plain meaning of the word "guaranteed" means that he was assured of salary and incentives for three years, regardless of whether he was employed. He first argues that if Nuveen had meant "subject to continuing employment" to constrain "guaranteed," it would have been "emphasized, underlined or otherwise called to the reader's attention." The Offer Summary is, however, sufficiently clear without such emphasis; it is only two pages long, well-organized and easy to read, and emphasis would have been unnecessary to clarify its meaning. Hogan next nonsensically suggests that this court read an implicit "his" in the clause because the phrase's position in the clause is after the word guaranteed. It would thus hypothetically read "subject to <u>his</u> continuing <u>his</u> employment." The court will not accept such a strained reading, as a phrase's plain meaning prevails in Illinois. See Dowd & Dowd, 181, Ill. 2d at 479.

Alternatively, Hogan argues that an apparent clash of ideas between "guaranteed" and "subject to continuing employment" creates ambiguity, and extrinsic evidence is needed to

7

clarify. However, the clause is, as Nuveen argues, unambiguous. It clearly and concisely dictates the base salary and bonuses that Hogan was guaranteed to receive during his first three years of employment at Nuveen. During this time, Hogan was to receive $275,000 a year in salary, plus annual cash incentives of $500,000 for 2000, $525,000 for 2001 and $550,000 for 2002, for continuing to work at Nuveen, guaranteed. "Guaranteed" here means that he will receive these bonuses despite what Nuveen's prevailing bonus system may have been, or may have changed to become during those three years. The phrase "subject to continuing employment" negates any ambiguities that "guaranteed" might create as to whether Hogan was entitled to payment after termination. The final sentence indicates that were Hogan still working at Nuveen after three years, his incentives would become consistent with those of his executive peer group at Nuveen.

That Hogan did not have a three-year term contract is further buttressed by the Separation Agreement, which specifically anticipates the possibility of severance before three years' time. Accordingly, the court finds that the Guaranteed Compensation clause is not ambiguous, and Hogan is not entitled to additional salary or cash incentives not yet been paid.

Next, Hogan argues that he is entitled to the $200,000 remainder of the Sign-On Bonus in the Offer Summary. The clause entitled "Sign-On Bonus" states:

> $350,000 payable 30 days subsequent to commencement of employment; and an additional $200,000 payable on the <u>first anniversary of employment</u>. [Emphasis added.]

Nuveen argues that a plain reading of this clause reveals that Hogan was entitled to receive $350,000 upon commencement of employment (payable thirty days thereafter), and an additional $200,000 after having worked for one year (payable on his first anniversary of employment). Thus, according to Nuveen, in order to reach one's "first anniversary of

8

employment," one must work for one year to reach one's first anniversary of employment. This is a reasonable reading of the Sign-On Bonus clause. Hogan argues that the Sign-On Bonus is conditional upon signing on, only. This is also a reasonable interpretation, because a reasonable person could read the clause, interpreting the words "Sign-On Bonus" as providing incentive to sign on only, and not for any other purpose. Therefore, there are two contrary, reasonable interpretations for the Sign-On Bonus Clause, and the court must resort to the cannons of interpretation and extrinsic evidence to interpret it.[4] Nuveen's judgment on the pleadings with respect to the Sign-On Bonus is denied.

Finally, Hogan contends that he is entitled to a second installment of securities under the clause entitled "Equity Incentives." This clause states:

> Executive will receive options on 40,000 shares of JNC Class A Common Stock upon commencement of employment. Executive also will receive options on an additional 40,000 shares upon the <u>first anniversary of employment</u>. These options will have strike prices equal to the respective market values per share on the dates these option awards are granted and will vest in single installments on the third anniversary of each of the respective awards. Executive also will be eligible for discretionary equity incentive awards made as a part of Nuveen's annual incentive compensation plan. [Emphasis added.]

Hogan contends, as he did with the Sign-On Bonus, that he is entitled to the second portion of stock options because this clause lacks the phrase, "subject to continuing employment." Nuveen again argues that Hogan never attained his "first anniversary of employment," and is therefore not entitled to the options. Although it is tempting to carry over the conclusion of ambiguity from the Sign-On Bonus because of the Equity Incentives clause's

---

[4]This clause, along with much of the rest of the contract that is not in dispute, is terribly ambiguous and poorly written. Such an important document for such an important official involving such a large sum deserved more attention from the drafter and the employee than was the case here.

9

seemingly identical use of the phrase "first anniversary of employment," this court resists doing so. The ambiguity of the Sign-On Bonus rests neither on the meaning of the phrase "first anniversary of employment" nor on the meaning of "Sign-On Bonus," but on both phrases contradicting each other. This contradiction does not exist with respect to the Equity Incentives clause. Indeed, "incentives" can be promised by an employer to an employee for a number of purposes, but none of them include paying incentives post-termination. For the reasons discussed above concerning the "Guaranteed Compensation" clause, Hogan is not entitled to additional equities pursuant to this clause. Nuveen's motion with respect to the Equity Incentives is granted.

### 2. Promissory Estoppel

In Count II, Hogan alleges that Nuveen repeatedly orally promised him a three-year term contract, and because of this he is entitled to relief under the theory of promissory estoppel. A promissory estoppel claim arises where one party has made a misleading representation to another party and the other party reasonably relies, to his detriment, on that representation. Mason & Dixon Lines, Inc. v. Glover, 975 F.2d 1298, 1304 (7th Cir. 1992). Under Illinois law, reliance on an oral misrepresentation cannot be justifiable if its terms are contradicted by a subsequently executed written document. Regensburger, 138 F.3d at 1207. "[T]he crucial question is whether the plaintiff's conduct was so unreasonable under the circumstances and in light of the information open to him, that the law may properly say that the loss is his own responsibility." Runnemede Owners, Inc. v. Crest Mortgage Corp., 861 F.2d 1053, 1058-59 (7th Cir. 1988), quoting Luciani v. Bestor, 106 Ill. App. 3d. 878 (1982).

10

In the instant case, Hogan's loss was his responsibility. He signed his contract of his own accord, after having had it in his possession ample time for the examination and consideration it deserved, and also ample time to have had it inspected by an attorney. Hogan even alleges that he engaged in extensive negotiations with Nuveen with respect to the terms of the contract, thus strengthening the idea that reliance on an alleged contrary oral representation was unreasonable. In light of the circumstances surrounding the agreement, and because he possessed the draft agreement for ample time for inspection, Hogan's reliance on oral promises of a three-year term contract were not justified. Hogan's promissory estoppel count is dismissed.

### 3. Fraud

In Count three, Hogan contends that he is entitled to relief under a fraud theory. Generally, fraud requires that there be a false statement of material fact, by a party who knows it to be false, with the intent to induce another to act, actual action in reliance on the truth of that representation, and injury as a result of such reliance. Runnemede, 861 F.2d at 1058. In addition, reliance must be reasonable. Id. The specific theory that Hogan relies on is called promissory fraud, which is not actionable in Illinois, except where the false promise or representation of intention of future conduct constitutes a scheme or device to accomplish the fraud. Bower v. Jones, 978 F.2d 1004, 1011 (7th Cir. 1992). The "scheme" necessary for the cause of action is a promise of performance, where the promising party does not intend to keep the promise, but intends for another party to rely on it, and the other party reasonably does rely on it to his detriment. Id.

In the instant case, although some elements of a promissory fraud theory may be present, Hogan runs into the same reasonable reliance problem as with his promissory estoppel

11

allegations. Because he had plenty of time to examine the contract, and because the contract was simple and unambiguous, and his reliance on alleged oral promises of these large sums of money was unreasonable, he lacks an essential element to a fraud cause of action. Hogan's fraud count is dismissed.

**Third Party Claim**

Hogan has also filed a third party complaint against GMA alleging negligent misrepresentation. GMA has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Rule 14(a) provides:

At any time after commencement of the action, a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. [Fed. R. Civ. P. 14(a).]

Thus, a proper third-party action for Hogan would allege that if he loses the original declaratory judgment suit, then GMA is responsible for all or part of Hogan's liability to Nuveen. This is not what Hogan alleges.

Hogan's third-party complaint alleges that GMA negligently misrepresented the nature of Hogan's employment contract; he does not allege that GMA is responsible for all or part of his liability to Nuveen. "The fact that the third-party claim arose out of the same transaction or set of facts is irrelevant, since impleader cannot be used as a way of combining all controversies having a common relationship." Forum Ins. Co. v. Ranger Ins. Co., 711 F. Supp. 909, 915 (N.D. Ill. 1989).

Rule 13(h), however, provides that "[p]ersons other than those made parties to the original action may be parties to a counterclaim or cross-claim in accordance with the provisions

of Rules 19 and 20." And Rule 20(a) permits joinder of a defendant when "there is asserted against them ... any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Since many of the meetings alleged here were attended by Hogan and both Nuveen and GMA employees, the assertions against them arise of the same series of transactions and factual allegations. Therefore, rather than dismiss the third party complaint for failure to state a proper impleader action, in the interest of judicial economy, this court will consider Hogan's "impleader" action as an additional party pursuant to Fed. R. Civ. P. 20(a) and 13(h). The court will thus reach the merits of the negligent misrepresentation claim.

Hogan alleges that GMA negligently made false representations with respect to the same payments and awards in dispute with Nuveen, and alleges that because of these misrepresentations, GMA is responsible for: a) his base salary for the remainder of his alleged three-year term contract plus guaranteed cash incentives for that time; b) the second portion of his Sign-On Bonus; and c) the second portion of Equity Incentives. In order to plead a negligent misrepresentation claim, the plaintiff must allege: 1) defendant's duty to communicate accurate information; 2) a false statement of material fact; 3) defendant's carelessness or negligence in ascertaining the truth or induce the other party to act; 4) defendant's intent to induce the other party to act; 5) plaintiff's justifiable reliance on the false statement; and 6) plaintiff's damages resulting from that reliance. Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc., 125 F.3d 468, 475 (7th Cir. 1997). Plaintiff's reliance must be reasonable. Regensburger, 138 F.3d at 1207; Runnemede, 861 F.2d 1053, 1058 (7th Cir. 1988). Illinois does not generally allow recovery for economic losses resulting from negligent misrepresentation. Moorman Mfg. Co. v.

13

Nat'l Tank Co., 91 Ill. 2d 69, 89 (1982). Illinois makes an exception, however, where the defendant is in the business of supplying information for the guidance of others in their business transactions. Id.

Hogan runs into the same justifiable reliance problem with his claim against GMA as he does with his promissory estoppel and fraud counterclaims against Nuveen. "[T]he injured party must have been justified in relying on the other's statement." Runnemede, 861 F.2d at 1058. (Emphasis omitted.) "A party is not justified in relying on representations made when he had an ample opportunity to ascertain the truth of the representations." Zimmerman v. Northfield Real Estate, Inc., 156 Ill. App. 3d 154, 167 (1st Dist. 1987). "The plaintiff, may, however, justifiably rely where the defendant has created a false sense of security or blocked further inquiry, provided that the facts were not such as to put a reasonable person on inquiry." Los Amigos Supermarket, Inc. v. Metropolitan Bank and Trust Co., 306 Ill. App. 3d 115, 128 (1st Dist. 1999). The Seventh Circuit has held, however, that a plaintiff in a negligent misrepresentation case "cannot establish that [he] reasonably relied on the pre-contract promises when the contractual language was so explicitly to the contrary." Regensburger, 138 F.3d at 1208.

As discussed above, Hogan had ample time (April 5 to April 12, 2000) to examine (or have an attorney examine) the agreement, which is brief and straightforward. The written Offer Summary and Separation Agreement are explicitly contrary to the misrepresentations that Hogan alleges in the instant case, as set forth above.[5] Therefore, Hogan could not have reasonably relied

---

[5]That this court finds the Sign-On Bonus ambiguous has no effect on whether Hogan was reasonable in relying on representations made by GMA. He was not.

14

on GMA's alleged representations. Accordingly, GMA's motion to dismiss the third-party complaint is granted.

## Conclusion

For the reasons stated above, Nuveen's motion for judgment on the pleadings is denied with respect to the "Sign On Bonus" clause, but granted on all other counts, and GMA's motion to dismiss is granted. This case is set for a report on status August 14, 2001, at 9:00 a.m.

**ENTER:** **July 31, 2001**

*Robert W. Gettleman*

Robert W. Gettleman
United States District Judge